# UNITED STATES OF AMERICA
# DEPARTMENT OF TRANSPORTATION
# FEDERAL AVIATION ADMINISTRATION

## NON PREMIUM HULL & LIABILITY WAR RISK
## NON-PR-H&L-9.28.11-MUA

### SECTION I: HULL POLICY

I. COVERAGE

The United States of America (hereinafter referred to as the Insurer), represented by the Administrator of the Federal Aviation Administration (FAA), hereinafter referred to as the Administrator, acting for the Secretary of Transportation, without premium shall provide by this Policy of Insurance, in accordance with applicable provisions of law and subject to all limitations thereof, and in consideration of the agreement of the Secretary of Defense to indemnify the Secretary of Transportation against all losses covered by insurance provided for United States or foreign air carriers having air transportation contracts with the Department of Defense (DOD) and the payment of binding fees, pursuant to 49 U.S.C. 44301-44310 (hereinafter Chapter 443), aircraft physical damage insurance for the aircraft described in the attached "Schedule of Aircraft Limits of Liability" (hereinafter the Schedule) for the account of **National Air Cargo Group, Inc. d/b/a National Airlines** (hereinafter referred to as the Insured) for risks associated with the operation of such aircraft by the Insured under a DOD contract.

II. AGREED AMOUNTS

A. The aircraft hull values set forth in the attached Schedule represent the amount of war risk physical damage insurance desired for each of such aircraft and shall be deemed to be the Sum Insured; provided, however, the Sum Insured for each aircraft shall be determined by the Administrator, in the exercise of his discretion pursuant to 49 USC 44302 and 44306, to be; (i) the amount that represents the fair and reasonable value of the aircraft, or (ii) the amount in effect on the commercial policy immediately prior to the activation of this insurance as set forth in the Schedule and/or FAA pre-approved self-insurance, or (iii) the cost to replace the aircraft with aircraft of like kind and quality, as determined by the Administrator. Loss, if any, payable to other than the Insured shall be as indicated on the Schedule attached to this Policy. It is the Insured's responsibility to review and confirm the accuracy of the Schedule. Confirmation will be assumed by all parties upon lack of dispute notification after the passage of ten (10) business days from receipt of the Schedule from the FAA.

B. The Insured agrees that, if the stipulated value of hull insurance carried against loss or damage from risks other than war risks is voluntarily reduced by the Insured on its commercial policy to an amount less than the Sum Insured value under this Policy, the Sum Insured under

EXHIBIT A (ALL-STATE LEGAL)

this Policy shall be considered to have been automatically reduced to the new amounts at the time of such reduction on the commercial Policy. In the event that the Insured significantly increases the value of the specified aircraft through enhanced maintenance, noise prevention efforts, or the like, the value of the insured aircraft may be increased to reflect such improvements if the Insured can present satisfactory evidence of the value of the improvements to the FAA.

C. The Schedule may be revised from time to time by agreement of the Administrator and the Insured to add or delete aircraft, or to change aircraft registration numbers. The Insured shall inform the FAA of any changes to the loss payees or additional insureds, provided, however, any such changes of loss payees on the Insured's commercial policy will automatically be assumed and accepted by this Policy. Additionally, any loss payee or additional insured that the Insured is contractually obligated to name as a loss payee or an additional insured in its lease or mortgage agreements with respect to an insured aircraft will automatically be assumed and accepted by this Policy.

III. CONDITIONS

A. Subject to the terms, conditions, and exclusions of this Policy, this insurance covers all physical loss or damage to the aircraft described and set forth in the Schedule, including engines, navigational instruments, parts and equipment installed on said aircraft while being operated by the Insured anywhere in the world under a DOD contract including while the Insured's aircraft have been activated for the Civil Reserve Air Fleet (CRAF), provided such loss or damage results from a War Risk Occurrence.

1. War Risk Occurrences are defined as any loss or damage directly or indirectly arising from, or occasioned by, or happening through or in consequences of:

(1) War (whether declared or not) (including war between Great Powers), invasion, acts of foreign enemies, warlike hostilities, civil war, rebellion, revolution, insurrection, martial law, exercise of military or usurped power, or any attempt at usurpation of power.

(2) Any hostile detonation of any weapon of war, including any employing atomic or nuclear fission and/or fusion or other like reaction of radioactive force or matter.

(3) Strikes, riots, civil commotions, or labor disturbances.

(4) Any act of one or more persons, whether or not agents of a sovereign power, for political or terrorist purposes and whether the loss or damage resulting therefrom is accidental or intentional, except for ransom or extortion payments.

(5) Any malicious act or act of sabotage, vandalism or other act intended to cause loss or damage.

(6) Confiscation, nationalization, seizure, restraint, detention, appropriation, requisition for title or use by or under the order of any foreign government (whether civil or

military or de facto) or foreign public or local authority.

(7) Hijacking or any unlawful seizure or wrongful exercise of control of the aircraft or crew (including any attempt at such seizure or control) made by any person or persons onboard the aircraft or otherwise, acting without the consent of the Insured.

(8) The discharge or detonation of a weapon or hazardous material while on the aircraft as cargo or in the personal baggage of any passenger, provided, however, that the cargo or passenger is on board the aircraft pursuant to the DOD contract.

Furthermore, this Policy, subject to the exclusions contained herein, covers claims arising while the aircraft is outside the control of the Insured by reason of any of the above perils. The aircraft shall be deemed to have been restored to the control of the Named Insured on the safe return of the aircraft to the Insured at an airfield not excluded by either the geographical limits of this Policy or the Insured's commercial Policy, and entirely suitable for the operation of the aircraft (such safe return shall require that the aircraft be parked with engines shut down with the crew under no duress). The Insurer waives no rights of subrogation or indemnification by virtue of this clause.

2. The Insurer will pay, subject to the terms, conditions, and exclusions of this Policy: (1) in respect to total loss, the Sum Insured; and (2) in respect to partial loss:

(a) If repairs are made by other than the Insured, the actual cost, as evidenced by bills rendered to the Insured less any discounts granted to the Insured, excluding the cost of overtime and its related overhead unless previously agreed to by the Insurer, to repair the damaged property with material or parts of like kind and quality, plus the reasonable cost of transporting new and/or damaged parts and/or the damaged aircraft to place of repair and the return of the repaired aircraft to the control of the Insured, plus the reasonable and necessary costs incurred by the Insured in association with these repairs.

(b) If repairs are made by the Insured, the total of the following items:

(i) Actual cost of material or parts of like kind and quality.

(ii) Actual wages paid for direct labor, excluding extra charges for overtime, unless such overtime is consistent with sound business practices and Insured's obligation to expeditiously and economically repair the damaged aircraft or property.

(iii) Overhead costs incurred by the Insured which shall be determined by the Administrator as 1) A reasonable percentage of Item (ii) in lieu of all overhead, including supervisory services, 2) actual overhead costs, or 3) the relevant percentage provided in the Insured's previously effective commercial hull Policy.

(iv) The reasonable cost of transporting new and/or the damaged parts and/or the damaged aircraft to place of repair and return of the repaired aircraft to place of accident or home airport, whichever is nearer.

(c) If repairs are not made and the aircraft is subsequently disposed of, then the estimated cost by the Administrator of making such repairs to the damaged property with material of like kind and quality or the difference between the fair and reasonable value of the aircraft before it was damaged and the value of the aircraft in its damaged state, whichever is less, as determined by the Administrator.

B. The amount due under this Policy in respect to a partial loss shall not exceed the Sum Insured should the loss payable be for a total loss. When the amount paid hereunder is equal to the Sum Insured, any salvage value remaining shall inure to the benefit of the Insurer. There shall, however, be no abandonment without the consent of the Insurer.

C. The Sum Insured, remaining after loss or damage from a War Risk Occurrence, shall be reduced by the amount of any loss or damage, whether or not covered by this Policy, until repairs have been completed and the value automatically restored in kind.

## IV.    PROMPT NOTICE OF LOSS

A. In the event of any War Risk Occurrence which may result in loss, damage, or expense for which the Insurer may become liable, prompt notice thereof, on being known to the Insured, shall be given by the Insured to the Administrator, provided, however, that failure to give such prompt notice because of the occasion of War Risk Occurrences or intervening regulations shall not prejudice this insurance.

B. Within 60 days after loss or damage, or expense for which the Insurer may become liable (unless such time is extended in writing by the Insurer), the Insured shall render to the Administrator a proof of loss claim signed and sworn to by the Insured stating the place, time, and cause of the loss or damage, the interest of the Insured and of all others in the aircraft, the fair and reasonable value at the time of the loss thereof, the amount and nature of the loss or damage, all encumbrances on the aircraft, all changes in title, and all other insurance covering said aircraft whether valid and collectible or not.

## V. SUBROGATION RIGHTS

The Insurer shall be subrogated to all the rights which the Insured may have against any other person or entity, in respect of any payment made under this Policy, to the extent of such payment, and the Insured shall, upon the request of the Insurer, execute all documents necessary to secure to the Insurer such rights. The Insured shall do nothing after a loss covered by this Policy to the prejudice of such rights of the Insurer. The Insurer and Insured will cooperate fully in the investigation of any loss.

## VI. INSURED AIRCRAFT AND PROPERTY

The insurance provided hereunder covers only loss or damage to the aircraft described in the Schedule while the aircraft is being operated by the Insured under a DOD contract and in compliance with said contract or during the entire period of activation and operation of the

aircraft for the Civil Reserve Air Fleet (CRAF) provided commercial insurance is not available on reasonable terms and conditions. Such operations under a DOD contract shall be deemed to include stop-overs, ground time, and ferry flights to position or de-position the aircraft.

## VII. ACTIVATION/DEACTIVATION AND TERMINATION

A. This policy shall remain in effect until amended or terminated by the parties. Insurance coverage shall commence upon activation by FAA for specified contingencies in response to a request from DOD to provide Chapter 443 insurance.

B. This Policy shall terminate:

1. Upon effective expiration of the authority of the Secretary of Transportation, subject to retroactive reauthorization, to provide insurance pursuant to 49 USC 44310; or

2. Five (5) days after notice of termination has been directly communicated to the Insured by the Administrator. A confirmation copy of this notice will be sent thereafter by facsimile or other additional means of communication or delivery to the Insured, or

3. As to any aircraft or contract upon the date specified in a notice from the Insured to the Administrator requesting such termination.

C. The Insured warrants this Policy of Insurance is free from any claim for loss, damage, or expense covered under any commercial policy in effect for the benefit of the Insured. This Policy may be deactivated or terminated, in whole or in part, by the Administrator if comparable insurance becomes obtainable on reasonable terms and conditions from the Insured's regular commercial insurance company or companies authorized to do an insurance business in a State of the United States. The Insured agrees that it will promptly notify the Administrator of any significant change in the terms and conditions under which insurance of the type provided by this Policy is obtainable from such commercial sources.

## VIII. AMERICAN AIRCRAFT

Unless specifically excepted by signed endorsement attached hereto, the Insured warrants that during the term of this insurance the aircraft insured hereunder are American aircraft as defined at 49 USC 44301(1): "the term 'American Aircraft' means any civil aircraft of the United States and any aircraft owned or chartered by, or made available to, the United States or any department or agency thereof, the government of any State, territory, or possession of the United States, or any political subdivision thereof, or the District of Columbia", and, if at any time during such term an aircraft shall cease to be an American aircraft as so defined, the insurance provided hereunder shall automatically terminate at the time of such change with respect to such aircraft without the return of the binding fee unless the Administrator of the FAA agrees otherwise.

## IX. PAYMENT OF CLAIMS

A. The FAA shall make prompt payment in full of any claim covered under this policy after confirmation of loss. Any subsequent post-incident losses, directly related to the incident shall be covered by this Policy as a loss directly related to the original subject loss incident.

B. The FAA, may at its discretion, and at any time prior to the final settlement of any claim by the Insured, elect to make a partial payment to the Insured for any loss, damage, or expense covered by this Policy.

**End of Section I: Hull Policy**

## UNITED STATES OF AMERICA
## DEPARTMENT OF TRANSPORTATION
## FEDERAL AVIATION ADMINISTRATION

## NON-PREMIUM HULL & LIABILITY WAR RISK
## NON-PR-H&L-9.28.11-MUA

### SECTION II: LIABILITY POLICY

I.     COVERAGE: The limits of liability contained in this policy are deemed to be those in effect in the policy holder's current commercial all risk insurance policy.

   A. The United States of America (hereinafter referred to as the Insurer), represented by the Administrator of the Federal Aviation Administration (FAA), hereinafter referred to as the Administrator, acting for the Secretary of Transportation, without premium shall provide by this Policy of Insurance, in accordance with applicable provisions of law and subject to all limitations thereof, and in consideration of the agreement of the Secretary of Defense to indemnify the Secretary of Transportation against all losses covered by insurance provided for United States or foreign air carriers having air transportation contracts with the Department of Defense (DOD) and the payment of binding fees, pursuant to 49 U.S.C. 44301-44310 (hereinafter Chapter 443), comprehensive liability insurance of the type indicated and in the limits shown in respect to each of the aircraft listed in the "Schedule of Aircraft Limits of Liability" (hereinafter the Schedule) attached hereto and made a part hereof, for direct War Risks and other associated liabilities arising from the operation of such aircraft, and the provision of goods or services directly related to and necessary for the operation of such aircraft by **National Air Cargo Group, Inc. d/b/a National Airlines** hereinafter referred to as the Insured) anywhere in the world as specified by DOD contracts.

   B. The Schedule may be revised from time-to-time by agreement of the Administrator and the Insured to add or delete aircraft, change aircraft registration numbers or additional insureds, or to adjust limits of liability.

   C. Subject to the limits of liability, exclusions, conditions, and other terms of this Policy, the Insurer hereby agrees to pay: (1) on behalf of the Insured, all sums which the Insured shall be legally liable to pay, or by final judgment be adjudged to pay, to any person or persons, including damages for personal injuries sustained, including death at any time resulting therefrom, damages for care and loss of services, or by reason of loss or damage to or destruction of property, including the loss of use thereof, resulting from the occurrence of loss; and (2) to the Insured, the fair and reasonable value of the damaged or destroyed spare parts and related equipment, whether carried on board the aircraft or positioned outside the United States and directly related to and necessary for the operation under the air transportation contract with the DOD; in respect to the aircraft listed and described in the Schedule(s), while such aircraft are being provided by the Insured under a DOD contract, for losses resulting from War Risk Occurrences.

## II. AGREED AMOUNTS

A. The amount shown on the Schedule may not exceed the corresponding limits of liability in effect on the Insured's All Risk commercial policy and FAA pre-approved self-insurance immediately prior to the activation of this insurance.

B. The Insured agrees that, if the limits of liability on the Insured's commercial insurance policy carried against liabilities arising from risks other than war risks are voluntarily reduced to amounts of insurance less than the limits of liability stated in the Schedule provided by this Policy, the insurance under this Policy shall be considered to have been automatically reduced to the new limits of liability on the Insured's commercial policies at the time of such reduction.

## III. CONDITIONS

War Risk Occurrences are defined as any loss or damage directly or indirectly arising from, or occasioned by, or happening through, or in consequences of:

    1. War (including war between Great Powers) (whether declared or not), invasion, acts of foreign enemies, warlike hostilities, civil war, rebellion, revolution, insurrection, martial law, exercise of military or usurped power, or any attempt at usurpation of power.

    2. Any hostile detonation of any weapon of war, including any employing atomic or nuclear fission and/or fusion or other like reaction of radioactive force or matter.

    3. Strikes, riots, civil commotions, or labor disturbances.

    4. Any act of one or more persons, whether or not agents of a sovereign power, for political or terrorist purposes and whether the loss or damage resulting therefrom is accidental or intentional, except for ransom or extortion payments.

    5. Any malicious act or act of sabotage, vandalism or other act intended to cause loss or damage.

    6. Confiscation, nationalization, seizure, restraint, detention, appropriation, requisition for title or use by or under the order of any foreign government (whether civil or military or de facto) or foreign public or local authority.

    7. Hijacking or any unlawful seizure or wrongful exercise of control of the aircraft or crew (including any attempt at such seizure or control) made by any person or persons onboard the aircraft or otherwise, acting without the consent of the insured.

        8.     The discharge or detonation of a weapon or hazardous material while on the aircraft as cargo or in the personal baggage of any passenger, provided, however, that the cargo or passenger is on board the aircraft pursuant to the DOD contract.

## IV.    DEFENSE AND SETTLEMENT OF CLAIMS

A. The Insurer shall have the duty to defend any suit or claim against the Insured seeking damages on account of any bodily injury, personal injury, or property damage covered under this policy, even if such suit is groundless, false or fraudulent and may make such investigation, negotiation, and settlement of any claim or suit as it deems proper and expedient, but the Insurer shall not be obligated to pay any claim or judgment or to defend any suit or claim after the applicable limit of the Insurer's liability has been exhausted by payment of judgments or settlements.

B. During such time as the Insurer is obligated to defend a claim or claims under the provisions of the preceding paragraph, the Insurer shall pay with respect to such claims, in addition to the applicable Limit of Liability:

        1.     All expenses incurred by the Insured, all costs taxed against the Insured in any suit or claim defended by the Insurer and all interest on the entire amount of any judgment thereon which accrues after entry of the judgment and before the Insurer has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the Insurer's liability thereon under this Policy; and

        2.     All reasonable expenses incurred by the Insured at the Insurer's request, other than for loss of earnings or for wages or salaries of employees of the Insured.

## V.    PROMPT NOTICE OF LOSS

A. In the event of any War Risk Occurrence which may result in loss, damage, or expense for which the Insurer may become liable, prompt notice thereof, on being known to the Insured, shall be given by the Insured to the Administrator, provided, however, that failure to give such prompt notice because of the occasion of War Risk Occurrences or intervening regulations shall not prejudice this insurance.

B. If a claim is made or suit is brought against the Insured, the Insured shall immediately notify the Insurer and timely provide a copy of every demand, notice, summons, pleading, motion, document filed with a court, settlement offer, and other process received by the Insured or its representatives.

## VI.    ASSISTANCE AND COOPERATION OF THE INSURED

A. The Insured shall not interfere in any negotiations of the Insurer for settlement of

any legal proceedings in respect to any War Risk Occurrence for which the Insurer may be liable under this Policy. In respect to any War Risk Occurrence likely to give rise to a claim under this Policy, the Insured is obligated to, and shall take such steps to, protect its and the Insurer's interests as would reasonably be taken in the absence of this or similar insurance. The Insurer shall consult in good faith, and adequately in advance, with the Insured regarding its proceeding and settlement strategy and proposed settlements, and ensure that it develops in good faith with the Insured a litigation defense or settlement strategy. The Insured shall do nothing after a loss covered by this Policy to the prejudice of such rights of the Insurer. The Insurer and Insured will cooperate fully in the investigation of any loss.

B. Whenever required by the Insurer, the Insured shall aid in securing information and evidence and in obtaining witnesses and shall cooperate with the Insurer in the defense of any claim or suit or in the appeal from any judgment, in respect of any War Risk Occurrence as herein provided.

VII. ACTION AGAINST THE INSURER

No action shall lie against the Insurer unless, as a condition precedent thereto, the Insured shall have fully complied with all of the terms of this Policy and until the amount of the Insured's obligations to pay, with respect to the specific legal action or claim in question, shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Claimant and the Insurer. Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this Policy to the extent such judgment or written agreement is not in excess of the remaining insurance afforded by this Policy. Nothing contained in this Policy shall give any person or organization any right to join the Insurer as a codefendant in any action against the Insured to determine the Insured's liability. Neither the filing nor the adjudication of bankruptcy or insolvency of the Insured or Insured's Estate shall relieve the Insurer of any of its obligations hereunder.

VIII. SUBROGATION RIGHTS

The Insurer shall be subrogated to all the rights which the Insured may have against any other person or entity, in respect of any payment made under this Policy, to the extent of such payment, and the Insured shall, upon the request of the Insurer, execute all documents necessary to secure to the Insurer such rights. The Insured shall do nothing after a loss covered by this Policy to the prejudice of such rights of the Insurer

IX. SUPPLEMENTAL COVERAGES

The insurance provided hereunder applies only to the liability associated with, or caused by, an aircraft described in the attached Schedule while the aircraft involved is being operated under, or subject to, a DOD contract by the Insured, during the Policy period or the Insured's other property located outside the United States directly related to and necessary for the operation of an aircraft which is utilized in direct support of a DOD contract, provided that commercial insurance is not available on reasonable terms and conditions. Such covered

operations shall be deemed to include stopovers, ground time, and ferry flights to position or deposition the aircraft, provided, however, that if commercial insurance is not available for such operations, and provided, further, that on such ferry flights the aircraft does not carry any passengers, cargo, or mail for compensation or hire. The insurance provided hereunder also applies to any liability associated with, or caused by, spare engines or other rotable parts, line maintenance equipment or inventory, or ramp and ground handling equipment directly related to and necessary for the operation of the covered aircraft in the performance of the DOD contract. The coverage afforded by this policy shall apply with respect to reasonable expense incurred by the Insured for the covered perils for the purpose of:

> A. search and rescue operations for an aircraft insured hereunder determined to be missing and unreported after the computed maximum endurance of the flight has been exceeded; or
>
> B. removal of wreckage of an aircraft insured hereunder; or
>
> C. the foaming of a runway to prevent or mitigate possible loss or damage because of a malfunction of the aircraft.

X. ACTIVATION/DEACTIVATION AND TERMINATION

A. This policy shall remain in effect until amended or terminated by the parties. Insurance coverage shall commence upon activation by FAA for specified contingencies in response to a request from DOD to provide Chapter 443 insurance.

> B. This Policy shall terminate:
>
> 1. Upon effective expiration of the authority of the Secretary of Transportation, subject to retroactive reauthorization, to provide insurance pursuant to 49 USC 44310, or
>
> 2. Five (5) days after notice of termination has been directly communicated to the Insured by the Administrator. A confirmation copy of this notice shall be sent thereafter by facsimile or other additional means of communication or delivery to the Insured, or
>
> 3. As to any aircraft or contract upon the date specified in a notice from the Insured to the Administrator requesting such termination.

C. The Insured warrants this Policy of Insurance is free from any claim for loss, damage, or expenses covered under any commercial policy in effect for the benefit of the Insured. This Policy may be deactivated or terminated, in whole or in part, by the Administrator if comparable insurance becomes obtainable on reasonable terms and conditions from the Insured's regular commercial insurance company or companies authorized to do an insurance business in a State of the United States. The Insured agrees that it will promptly notify the Administrator of any significant change in the terms and conditions under

which insurance of the type provided by this Policy is obtainable from such commercial sources.

## XI. AMERICAN AIRCRAFT

Unless specifically excepted by signed endorsement attached hereto, the Insured warrants that during the terms of this insurance the aircraft insured hereunder are American aircraft as defined in 49 USC 44301(1). "the term 'American Aircraft' means any civil aircraft of the United States and any aircraft owned or chartered by, or made available to, the United States or any department or agency thereof, the government of any State, territory, or possession of the United States, or any political subdivision thereof, or the District of Columbia", and, if at any time during such term an aircraft shall cease to be an American aircraft as so defined, the insurance provided hereunder shall automatically terminate at the time of such change with respect to such aircraft without the return of binding fee unless the Administrator agrees otherwise.

## XII. PAYMENT OF CLAIMS

A. The FAA shall make prompt payment in full, on behalf of the Insured, of any claim covered under this Policy after the Insured shall become legally liable to pay, or by final judgment be adjudged to pay. Any subsequent post-incident losses, directly related to the incident, incurred shall be covered by this Policy as a loss directly related to the original subject loss incident.

B. The FAA may at its discretion, and at any time prior to the final settlement of any claim by the Insured, elect to make a partial payment to the Insured for any loss, damage, or expense covered by this Policy.

## XIII. AIR CREW PERSONAL INSURANCE POLICIES

Subject to the terms, limitations, and conditions in this Policy, the United States, acting through the FAA, shall provide insurance on the same terms and conditions (except a war risk exclusion) in any insurance policy purchased by a crewmember employed by the Insured or an associated contractor personnel of the Insured when such insurance is lost as a result of war risks associated with the duties of that crewmember or contractor personnel while on or performing a DOD contract mission insured under this Policy. Only full-time commercial policies for life insurance, accidental death and dismemberment, and business travel accident insurance purchased by the individual and in effect for at least three (3) months prior to the activation of this Policy shall be covered by this section. The amounts payable under this section for one individual shall be limited to the face value of all such insurance policies or one (1) million U.S. dollars, whichever is less.

**End of Section II: Liability Policy**

SECTION: III POLICY ISSUE DATE, NOTICE OF EFFECTIVE COVERAGE, AND AUTHORIZING SIGNATURE

## SECTION: III POLICY ISSUE DATE, NOTICE OF EFFECTIVE COVERAGE, AND AUTHORIZING SIGNATURE

This policy is issued on **28th day of September, 2011** and the terms remain in effect until canceled or terminated in accordance with Section I: Hull Policy, Article VII and Section II: Liability Policy, Article X.

This policy becomes effective when a Notice of Effective Coverage is issued to the policy holder and will remain in effect from the start date to the end date in that notice.

For the **UNITED STATES OF AMERICA**

*[signature]*

Phyllis Preston, Manager, Management Staff
Office of Policy, International Affairs, & Environment
Federal Aviation Administration

Date: 9/28/2011



U.S. Department of Transportation  
Federal Aviation Administration

600 Independence Avenue, S.W.  
Washington, D.C. 20591

## Fleet Schedule Report - Non-Premium Insurance Program

Re: National Air Cargo Group, Inc. d/b/a  
National Airlines

Type of Report: Fleet Schedule

Date of Report: 4/19/2012 09:51 ET

As of: 4/19/2012 09:51 ET

| Aircraft Type | Registration Number | Serial Number | Value (Whole Dollars) | Limit of Liability (Whole Dollars) |
|---|---|---|---|---|
| B 747-400 | N952CA | 25238 | $40,000,000 | $500,000,000 |
| B 747-400 | N919CA | 25302 | $40,000,000 | $500,000,000 |
| B 747-400 | N949CA | 25630 | $40,000,000 | $500,000,000 |
| B 757-200 | N169CA | 25592 | $5,000,000 | $500,000,000 |
| DC-8-63 | N865F | 46088 | $5,000,000 | $500,000,000 |
| DC-8-71F | N872CA | 46040 | $5,000,000 | $500,000,000 |
| DC-8-73F | N155CA | 46073 | $5,000,000 | $500,000,000 |

A total of 7 aircraft                                      $140,000,000

 

U.S. Department of Transportation  
Federal Aviation Administration

800 Independence Avenue, S.W.  
Washington, D.C. 20591

# Fleet Schedule Report - Non-Premium Insurance Program

Re: National Air Cargo Group, Inc. d/b/a  
National Airlines

Type of Report: Fleet Schedule

Date of Report: 6/21/2012 14:50 ET

As of: 6/21/2012 14:50 ET

| Aircraft Type | Registration Number | Serial Number | Value (Whole Dollars) | Limit of Liability (Whole Dollars) |
|---|---|---|---|---|
| B 747-400 | N952CA | 25238 | $40,000,000 | $500,000,000 |
| B 747-400 | N919CA | 25302 | $40,000,000 | $500,000,000 |
| B 747-400 | N949CA | 25630 | $40,000,000 | $500,000,000 |
| B 757-200 | N176CA | 24543 | $5,000,000 | $500,000,000 |
| B 757-200 | N169CA | 25592 | $5,000,000 | $500,000,000 |

A total of 5 aircraft                    $130,000,000